**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY BURGESS** | : | |
|     Petitioner | : | |
| | : | |
| VS. | : | **3:CV-06-1954** |
| | : | **(JUDGE VANASKIE)** |
| | : | |
| **RONNIE HOLT** | : | |
|     Respondent | : | |
| | : | |

**MEMORANDUM**

Anthony Burgess petitions <u>pro se</u> for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the decision of the United States Parole Commission ("Commission") to revoke his parole. (Dkt. Entry 1.) The Commission concluded that Mr. Burgess violated the conditions of his parole when he raped and sexually assaulted a female victim on January 2, 2005. Mr. Burgess, an inmate at FCI-Schuylkill, asserts several grounds in support of his petition. For the reasons that follow, Mr. Burgess's petition will be denied.

**I. BACKGROUND**

    **A. Factual Background**

On September 8, 1992, the Superior Court of the District of Columbia sentenced Mr. Burgess to a prison term of four (4) to twelve (12) years following his guilty plea to distributing cocaine. (Judgment & Commitment Order, Ex. 1 to Gov't's Resp. to Pet., Dkt. Entry 13-2.) Mr. Burgess was paroled twice in relation to this sentence, but each attempt to restore him to

society proved unsuccessful as his parole was revoked for unspecified violations. On December 11, 2003, Mr. Burgess was paroled a third time by the Commission, effective December 16, 2003, and he was to remain under supervision until June 16, 2010.[1] (Certificate of Parole, Ex. 2 to Gov't's Resp. to Pet., Dkt. Entry 13-2, at 1.) The Commission imposed several conditions on Mr. Burgess's release, including that he was not to violate any law, and he was not to purchase, possess, or use marijuana or "other habit-forming or dangerous drugs." (Id. at 2.)

On February 28, 2005, the Commission received a "Request for Parole Violator Warrant" from a probation officer in the Southern District of New York, where Mr. Burgess resided. (Ex. 3 to Gov't's Resp. to Pet., Dkt. Entry 13-2.) The probation officer reported her opinion that Mr. Burgess had violated several conditions of his parole. Mr. Burgess had used marijuana on at least two occasions, and he was arrested on February 5, 2005 on a charge of possession of marijuana in the fifth degree. (Id. at 1.)

More serious, however, was the probation officer's report that, on January 2, 2005, Mr. Burgess allegedly committed a rape. (Id.) According to the criminal complaint and police reports appended to the warrant request, Mr. Burgess went to Renee Tyson's apartment building to exchange property. (Id. at 9.) Ms. Tyson allowed him into her apartment where he

---

[1]Pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11231, 111 Stat. 251, 745, and D.C. Code § 24-409, the Commission exercises authority over District of Columbia parolees. See also 28 C.F.R. § 2.70.

followed her into the bedroom, threw her onto her bed, and forcibly removed her sweat pants. (Id.)  He then allegedly performed oral sex on Ms. Tyson and then raped her.  (Id.)  After Mr. Burgess departed, Ms. Tyson called the police and was eventually transported to a hospital. (Id. at 9-10.)

Mr. Burgess was arrested on February 5, 2005, and charged with the two sexual offenses.  (Id. at 2.)  A grand jury was convened to consider the charges against Mr. Burgess and heard testimony from Ms. Tyson and Mr. Burgess.  (Letter from Michael D. Horn to Christy Younger, June 10, 2005 ("Horn Letter"), Ex. to Pet'r's Traverse to Gov't's Resp., Dkt. Entry 14.) The grand jury failed to a return an indictment and, on February 10, 2005, the charges against Mr. Burgess were dismissed.  (Id.)

Although Mr. Burgess was not criminally prosecuted for the assault and rape of Ms. Tyson, he did face a parole revocation hearing.  The probation officer contacted Ms. Tyson, who indicated a willingness to testify against Mr. Burgess. (Request for Parole Violator Warrant 2.)  Ms. Tyson also confirmed the events recounted in the criminal complaint and provided a written statement to the probation officer.  (Id.; see also Statement of Renee Tyson, Mar. 11, 2005 ("Tyson Statement"), Ex. to Pet'r's Traverse to Gov't's Resp., Dkt. Entry 14.)

The Commission issued a warrant for Mr. Burgess's arrest on March 7, 2005.  (Ex. 5 to Gov't's Resp. to Pet., Dkt. Entry 13-2.)  The warrant charged Mr. Burgess with three violations of the conditions of his parole.  The first charge arose from the rape and criminal sexual act

offenses ("the sexual offenses charge"), and charges two and three pertained to the marijuana use and criminal possession of marijuana, respectively. (Id. at 1-2.) On March 23, 2005, Mr. Burgess was arrested during a visit with his probation officer. (Preliminary Interview Report, Ex. 6 to Gov't's Resp. to Pet., Dkt. Entry 13-2, at 1.)

A preliminary interview was held on March 30, 2005, at a Brooklyn detention center. Mr. Burgess was furnished with a copy of the warrant, and the interviewing officer explained the charges and advised Mr. Burgess of his right to counsel and his right to request the presence of "friendly or adverse witnesses" during the interview. (Id.) Mr. Burgess refused to cooperate during the interview and would not sign necessary documents concerning appointment of counsel or comment on the charges. (Id. at 1-2.) Nevertheless, the interviewing officer found probable cause on each charge. (Id.; see also Hr'g Summ., June 13, 2005 ("June Hr'g Summ."), Ex. 7 to Gov't's Resp. to Pet., Dkt. Entry 13-2, at 1 (noting the Commission's concurrence in this recommendation).)

On June 13, 2005, a revocation hearing was held in Philadelphia. Mr. Burgess was represented by an attorney. (June Hr'g Summ. 1.) The hearing examiner declined to proceed on the sexual offenses charge. Mr. Burgess's recalcitrance at the preliminary interview caused uncertainty over whether he had waived his right to counsel at the preliminary interview or to confront and cross-examine adverse witnesses at a local hearing. (Id. at 1-2.) The hearing examiner decided to continue the hearing as to the sexual offenses charge in order to resolve

4

the waiver issue.[2]  (Id. at 2.)

The Commission undertook a review of this issue and decided to afford Mr. Burgess an opportunity to request an attorney and to confront and cross-examine adverse witnesses.  (Hr'g Summ., Feb. 17, 2006 ("Feb. Hr'g Summ."), Ex. 10 to Gov't's Resp. to Pet., Dkt. Entry 13-2, at 1.)  Mr. Burgess submitted the appropriate paperwork and requested a local hearing.  (Ex. 9 to Gov't Resp. to Pet., Dkt. Entry 13-2.)   The Commission scheduled a hearing in Brooklyn for February 17, 2006.

At the outset of the February 17 hearing, the hearing examiner explained the rules of the administrative proceeding, including the standard of proof, and confirmed Mr. Burgess's understanding of his rights and that he had sufficient time to prepare with his attorney.  (Hr'g Tr., Feb. 17, 2006, Ex. to Pet'r's Traverse to Gov't's Resp., Dkt. Entry 14, at 4-7.)  The examiner then heard testimony from three witnesses: Mr. Burgess, Ms. Tyson, and Richard Perez, a detective with the Queens special victims squad of the New York City Police Department, who investigated Ms. Tyson's complaint.

Mr. Burgess denied the sexual offenses charge.  (Id. at 10.)  He explained that he went

---

[2] The hearing examiner did move forward on the second and third charges against Mr. Burgess.  Mr. Burgess admitted the conduct alleged in charge two – use of marijuana – and the examiner recommended revocation of parole.  (June Hr'g Summ. 2-3.)  The Commission adopted the examiner's finding and recommendation as to charge two.  (Notice of Action, July 7, 2005, Ex. 8 to Gov't's Resp. to Pet., Dkt. Entry 13-2.)  The hearing examiner made no finding as to charge three – criminal possession of marijuana – because Mr. Burgess denied the charge, and the criminal charge had been dismissed.  (June Hr'g Summ. 3.)

to Ms. Tyson's apartment on January 2 to exchange property and keys, and she invited him upstairs. (Id. at 12.) Mr. Burgess admitted that he performed oral sex on Ms. Tyson and had sexual intercourse with her, but insisted it was consensual. (Id. at 13-14.)

Ms. Tyson testified that she met Mr. Burgess outside her building to return each other's property. They went upstairs to her apartment because she forgot some of Mr. Burgess's items. (Id. at 25.) She testified that Mr. Burgess followed her into her bedroom and raped her, but she initially denied that Mr. Burgess committed any other sexual acts. (Id. at 25-27.) After the attack, Ms. Tyson was transported to a hospital, where she was examined by a doctor. (Id. at 29.) Ms. Tyson did not recall the results of the examination, which included a rape test. (Id. at 29-30.) The hearing examiner questioned Ms. Tyson about her March 11, 2005 statement to the probation officer, which indicated that Mr. Burgess performed oral sex in addition to raping her. (Id. at 30; see also Tyson Statement 2.) Ms. Tyson responded that the statement was accurate, and that she misunderstood the hearing examiner's earlier question. (Hr'g Tr. 30-31.)

After the hearing examiner's questioning, Ms. Tyson was cross examined by Mr. Burgess's attorney. The attorney challenged her story and explored possible motives to fabricate the allegations against Mr. Burgess. (See id. at 36-37, 45-47, 49-51.) Towards the end of the cross-examination, Mr. Burgess's attorney attempted to question Ms. Tyson about her mental health history. (Id. at 51.) The hearing examiner did not allow this line of questioning, reasoning that it was irrelevant as Ms. Tyson "seem[ed] mentally competent. . . ."

(Id.)

The final witness was Detective Perez.  He interviewed Ms. Tyson on January 3, 2005.  He learned that Mr. Burgess followed her into her bedroom, threw her onto the bed, removed her sweat pants, and then sodomized and raped her.  (Id. at 54-55.)  Detective Perez conceded that he did not interview the doctor who examined Ms. Tyson after the incident.  (Id. at 56.)  He testified, however, that based upon his experience investigating sex crimes, particularly where the assailant and victim know each other, he believed Ms. Tyson's allegations.  He based his conclusion on his observations of Ms. Tyson, whom he described as being terrified.  (Id. at 57.)

At the conclusion of the hearing, the examiner issued his recommendation.  He found by a preponderance of the evidence that Mr. Burgess violated his conditions of parole as alleged in the sexual offenses charge.[3]  (Id. at 71.)  The examiner explained his recommendation in a written report, which summarized in detail the testimony and documentary evidence.  (Feb. Hr'g Summ. 2-5.)  He acknowledged "some" inconsistencies between Ms. Tyson's testimony and her prior written statement, but found her to be more credible than Mr. Burgess and concluded that he raped her.  (Id. at 5.)  Moreover, the examiner credited Detective Perez's testimony that, based upon his experience, Ms. Tyson was raped.  (Id. at 6.)  The examiner recommended that parole be revoked, and that Mr. Burgess be imprisoned until his mandatory

---

[3]See 28 C.F.R. § 2.105(a) (standard of proof is preponderance of the evidence); Hurt v. Holencik, No. Civ. 1:CV-05-0175, 2005 WL 1653175, at *3 (M.D. Pa. July 6, 2005).

release date of January 5, 2010.[4]  (Id. at 7.)

The Commission adopted the hearing examiner's findings and recommendations. (Notice of Action, Mar. 13, 2006, Ex. 11 to Gov't's Resp. to Pet., Dkt. Entry 13-2.)  Mr. Burgess appealed the decision to the Commission's National Appeals Board.  The appeals board concluded that all of Mr. Burgess's asserted claims of error were meritless and, therefore, affirmed the decision.  (Notice of Action on Appeal, Aug. 31, 2006, Ex. 12 to Gov't's Resp. to Pet., Dkt. Entry 13-2.)

### B. Procedural History

On October 3, 2006, Mr. Burgess filed a Petition for Writ of Habeas Corpus (Dkt. Entry 1), and a Motion for Leave to Proceed In Forma Pauperis.  (Dkt. Entry 3.)  On October 11, 2006, the Court granted Mr. Burgess's motion for in forma pauperis status and directed service of the petition on the Respondent, Ronnie Holt, Warden of FCI-Schuylkill.  (Dkt. Entry 7.)  The Government filed a response and supporting exhibits on November 14, 2006.  (Dkt. Entry 13.)  Mr. Burgess filed a traverse with exhibits on November 30, 2006.  (Dkt. Entry 14.)  The petition is now ripe for disposition.

---

[4]The hearing examiner calculated Mr. Burgess's guidelines imprisonment range of 78 to 100 months based upon a category six severity level and a salient factor score of one. (Feb. Hr'g Summ. 6.)  Because Mr. Burgess had a mandatory release date of January 5, 2010, a departure from the guidelines range was required.  (Id. at 7.)  The hearing examiner concluded that a further departure was not warranted.  (Id.)  Mr. Burgess does not contest the soundness of this calculation.

## II. DISCUSSION

In reviewing Mr. Burgess's petition, the Court is mindful of his pro se status and the need to liberally construe his petition. See Lewis v. Attorney Gen., 878 F.2d 714, 722 (3d Cir. 1989); Russell v. Miner, No. Civ. A. 04-4787 (RBK), 2005 WL 1868933, at *2 (D.N.J. Aug. 5, 2005). In this regard, he appears to assert three grounds for relief. First, Mr. Burgess argues that the Commission's decision is not supported by the evidence. Second, Mr. Burgess contends that the Commission committed procedural errors. Finally, Mr. Burgess contends that he received ineffective assistance of counsel during the parole revocation hearing. These issues will be addressed seriatim.

### A. The Commission's Decision has a Rational Basis in the Record

Mr. Burgess first contends that the evidence does not support the Commission's finding that he raped and sexually assaulted Ms. Tyson. He argues that Ms. Tyson's testimony is incredible because it was inconsistent with her prior statements to the police and the probation officer. Mr. Burgess further argues that the Commission's decision must be set aside because the underlying criminal charges were dismissed.

The Court's review of the Commission's decision to revoke parole is very limited. As explained by our Court of Appeals:

> The appropriate standard of review of the Commission's findings of fact "is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions

embodied in its statement of reasons."

Furnari v. Warden, Allenwood Fed. Corr. Inst., 218 F.3d 250, 254 (3d Cir. 2000) (quoting Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976)).  The Court "may not weigh the evidence, [but] must be certain that at least some of it is rationally connected to the Commission's finding."  Gambino v. Morris, 134 F.3d 156, 161 (3d Cir. 1998).  In other words, the "'decision [must] not [be] arbitrary and capricious, nor based on impermissible considerations.'"  Id. at 160 (quoting Zannino, 531 F.2d at 690).

      In this matter, the Commission found by a preponderance of the evidence that Mr. Burgess sexually assaulted and raped Ms. Tyson.  Ms. Tyson testified that Mr. Burgess followed her into her bedroom, forced her onto the bed, removed her sweat pants, and raped her.  The testimony of the sexual assault victim alone is sufficient to sustain the Commission's finding.  See Wright v. Vasbinder, No. 05-CV-72718-DT, 2007 WL 127908, at *5 (E.D. Mich. Jan. 11, 2007).  Her testimony provides a rational basis for the Commission's decision..

      Mr. Burgess complains that the Commission's reliance upon Ms. Tyson's testimony was erroneous because her testimony at the hearing was inconsistent with her prior written statement.  He argues that this Court "should and must focus upon the conflicting testimony."  (Pet'r's Traverse to Gov't's Resp., Dkt. Entry 14, at 3.)  In effect, Mr. Burgess invites this Court to re-weigh the evidence and render its own findings of fact.  Such a course of action, however, is incompatible with the Court's deferential review of parole revocation hearings.  See Gambino,

134 F.3d at 161.

The hearing examiner, though acknowledging "some" inconsistency between Ms. Tyson's testimony and her prior written statement to the probation officer, found Ms. Tyson to be more credible than Mr. Burgess and concluded that she was raped. "Where conflicting evidence is presented in a parole revocation hearing, the issue of the reliability of such evidence is properly a matter for the Commission." Williams v. U.S. Parole Comm'n, 617 F. Supp. 470, 472 (M.D. Pa. 1985). In this regard, the Commission's credibility determinations are insulated from judicial review. See Russell, 2005 WL 1868933, at *2 (citing Billiteri v. U.S. Bd. of Parole, 541 F.2d 938, 944 (2d Cir. 1976)). Consequently, Mr. Burgess cannot obtain relief on this basis.

Mr. Burgess also protests the decision to revoke his parole because the underlying criminal charges were dismissed. It is well settled that the Commission may revoke parole based upon criminal conduct even though the parolee is never criminally charged, the underlying criminal charges are dismissed, or the parolee is acquitted of the charges. See Campbell v. U.S. Parole Comm'n, 704 F.2d 106, 110 (3d Cir. 1983); Wright, 2007 WL 127908, at *5; Bryant v. Jenkins, Civ. No. 05-4469 (JBS), 2006 WL 1373182, at *3 (D.N.J. May 15, 2006); Hurt, 2005 WL 1653175, at *6. "All that is required is the revocation be based on the [Commission's] independent, properly conducted procedures." Bryant, 2006 WL 1373182, at

*3.  Therefore, this contention is without merit.[5]

In summary, the Commission had a rational basis to find that Mr. Burgess violated the conditions of his parole by committing the conduct alleged in the sexual offenses charge. The dismissal of the underlying criminal charges did not preclude the Commission from revoking Mr. Burgess's parole. Accordingly, Mr. Burgess's petition will be denied.

**B. Procedural Error**

Mr. Burgess alleges that the Commission committed several procedural errors that undermine the propriety of its decision. First, Mr. Burgess contends that the Commission failed to consider several items of "exonerative" evidence, including the results of a rape test and Detective Perez's notes of his interview with Ms. Tyson. Mr. Burgess did not seek to introduce this evidence during the hearing. Rather, it appears that this contention is premised on the notion that the Commission had a duty to investigate and uncover this evidence for its

---

[5]Mr. Burgess attempts to analogize his situation to cases where courts purportedly held that an inmate may not be administratively sanctioned for conduct that resulted in criminal charges if those charges are subsequently dismissed or the inmate is acquitted. (See Pet'r's Traverse to Gov't's Resp., Dkt. Entry 14, at 9.) In this regard, he cites Rusher v. Arnold, 550 F.2d 896 (3d Cir. 1977), and Barrows v. Hogan, 379 F. Supp. 314 (M.D. Pa. 1974). Mr. Burgess, however, should re-read Rusher. There, the district court, applying its earlier decision in Barrows, directed the Bureau of Prisons to restore an inmate's good time credit previously forfeited due to the inmate's escape from prison, when the inmate was ultimately acquitted of the criminal charge. 550 F.2d at 897-98. On appeal, the Third Circuit reversed, holding that an acquittal on criminal charges does not bar administrative sanctions for violations of prison rules, even though the criminal charge and sanctions stem from the same conduct. Id. at 899-900. Because Rusher repudiates Barrows and supports the Commission's decision, Mr. Burgess's argument lacks merit.

consideration.

This argument is baseless.  As the Government observes, the Commission does not have an obligation to conduct an investigation on behalf of a parolee.  (Gov't's Resp. to Pet., Dkt. Entry 13, at 8.)  The regulatory provisions governing the Commission's proceedings do not impose a duty to investigate, see 28 C.F.R. § 2.103, and courts have held that the Commission is a "record reviewing, rather than an investigate, agency."  Fox v. U.S. Parole Comm'n, 517 F. Supp. 855, 859 (D. Kan. 1981); see also Furnari, 218 F.3d at 257; Zimmitti v. Warden, FCI Otisville, No. 90 Civ. 5664 (MBM), 1991 WL 30667, at *3 (S.D.N.Y. Mar. 5, 1991) ("The Commission is not required to solicit information which, if presented by a party, it would have the duty to consider.").  The burden was on Mr. Burgess and his attorney to discover exculpatory evidence and introduce it for the Commission's consideration.  Therefore, Mr. Burgess is not entitled to relief on this basis.

Mr. Burgess also alleges that the hearing examiner improperly limited his cross-examination of Ms. Tyson.  (Pet'r's Traverse to Gov't's Resp., Dkt. Entry 14, at 7.)  Mr. Burgess's attorney sought to impeach Ms. Tyson with questions about her mental health history.  (Hr'g Tr. 51.)  The hearing examiner precluded this line of questioning, reasoning that Ms. Tyson's mental health history was irrelevant to her credibility as it had not been shown to affect her competence as a witness.  (Id.)

In Morrissey v. Brewer, the Supreme Court held that a parole violator has "the right to

confront and cross-examine adverse witnesses" at the revocation hearing. 408 U.S. 471, 489 (1972). Nevertheless, the hearing examiner is not foreclosed from imposing reasonable restrictions out of concern that the examination has marginal relevance or is repetitive. Reilly v. Morton, No. 97-CV-5571 (FB), 1999 WL 737916, at *6 (E.D.N.Y. Sept. 16, 1999), aff'd mem., 213 F.3d 626 (2d Cir. 2000). Furthermore, the regulations governing parole revocation procedures provide that a hearing examiner "may limit or exclude any irrelevant or repetitious statement or documentary evidence." 28 C.F.R. § 2.103(b).

In this matter, the hearing examiner afforded Mr. Burgess an adequate opportunity to cross-examine Ms. Tyson, and his attorney attacked her story and explored possible motives to fabricate the allegations against Mr. Burgess. The hearing examiner limited the cross-examination only when Mr. Burgess's attorney veered into territory – Ms. Tyson's mental health – that was not shown to be related to credibility. Mr. Burgess has not shown how this line of questioning was probative of Ms. Tyson's credibility or to proof of the sexual offenses charge. He has not suggested what mental health treatment, if any, had ever been received by Ms. Tyson. He has not tendered a diagnosis of any mental health care problem probative of credibility. At the hearing, his attorney did not suggest how the line of inquiry was relevant to credibility. Therefore, the hearing examiner did not abuse his discretion in precluding the cross examination on the victim's mental health history . See United States v. Giorgi, 840 F.2d 1022, 1038 (1st Cir. 1988); United States v. Gonzalez-Sanchez, 825 F.2d 572, 586 (1st Cir. 1987)

(witness's mental health history pertinent only if it bears on witness's ability to perceive events about which she is testifying). In this regard, it is significant that the accounts of the sexual encounter provided by Mr. Burgess and Ms. Tyson are quite similar, with the only significant difference bearing on the issue of consent. It is also significant that Ms. Tyson reported the encounter as a sexual assault immediately after it occurred. Ms. Tyson was cross examined extensively on the issue of consent, and the failure to allow an inquiry on any mental health history was harmless. See United States v. Friedman, 854 F.2d 535, 571-72 (2d Cir. 1988)

### C. Ineffective Assistance of Counsel

Finally, Mr. Burgess argues that he was denied effective assistance of counsel during the parole revocation hearing. He argues that his attorney failed to obtain and introduce evidence of the rape test and Detective Perez's interview notes; failed to adequately cross-examine Ms. Tyson; and failed to notify a witness of the hearing date.

The right to effective assistance of counsel flows from the constitutional right to counsel. See, e.g., Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (per curiam). In the parole revocation context, the Supreme Court has never held that a parolee has an absolute right under the due process clause to counsel or to the appointment of counsel if indigent. See Gagnon v. Scarpelli, 411 U.S. 778, 790 (1973); Morrissey, 408 U.S. at 489. While the Court in Gagnon would not foreclose the right to counsel in all instances, see 411 U.S. at 790, in most revocation hearings counsel will be "both undesirable and constitutionally unnecessary." Id.

In the wake of Gagnon, courts in this circuit have concluded that there is no right to counsel in parole revocation hearings and have rejected claims of ineffective assistance of counsel.  See Simmons v. Colleran, No. Civ. A. 05-1127, 2005 WL 2783001, at *3 (E.D. Pa. Oct. 24, 2005); Riley v. Myers, No. Civ. A. 01-6958, 2002 WL 31845865, at *7 (E.D. Pa. Dec. 18, 2002); Person v. Pa. Bd. of Prob. & Parole, Nos. Civ. 98-2149, 98-6508, 1999 WL 973852, at *12 (E.D. Pa. Oct. 20, 1999).  Following this reasoning, Mr. Burgess did not have a right to counsel at his parole revocation hearing and, perforce, his claim for ineffective assistance of counsel fails.

Even if Mr. Burgess had a right to counsel and could assert an ineffective assistance of counsel claim, he would not succeed.  To prevail on this claim, Mr. Burgess must satisfy the familiar two-prong test of Strickland v. Washington, 466 U.S. 668, 687 (1984), by demonstrating that his attorney's performance was deficient, and that this deficient performance prejudiced his defense.  Prejudice is shown only where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

In this matter, Mr. Burgess has failed to show that he was prejudiced by his attorney's alleged errors.  He claims that his attorney failed to discover and introduce at the hearing the results of the rape test and Detective Perez's interview notes.  However, Mr. Burgess has not demonstrated that the rape test results were actually available for discovery by his attorney.

And, while he baldly asserts that the test results were negative, this fact would not prevent the Commission from finding that a rape occurred. See United States v. Pike, 36 F.3d 1011, 1013 (10th Cir. 1994) (conviction for sexual abuse based primarily upon victim's testimony is upheld even though testimony of medical expert and laboratory results conflicted with her account). As for Detective Perez's interview notes, Mr. Burgess does not describe the contents of the notes, nor does he explain how the notes differ from Detective Perez's testimony summarizing his interview with Ms. Tyson. Therefore, this aspect of Mr. Burgess's ineffective assistance of counsel claim is without merit.

Mr. Burgess also criticizes his attorney's cross-examination of Ms. Tyson. A review of the hearing transcript does not support a finding that counsel's interrogation was deficient. However, even if the cross-examination had been more vigorous and probing, Mr. Burgess has not demonstrated a reasonable probability that the outcome of the parole revocation hearing would have been different.

Finally, Mr. Burgess complains that his attorney failed to notify Michael D. Horn, Mr. Burgess's attorney in the criminal proceeding, about the February hearing date, which precluded his testimony. The Court has reviewed the Horn Letter, which presumably summarizes his proposed testimony, and it is evident that Mr. Horn's testimony is wholly irrelevant to whether Mr. Burgess violated the conditions of his parole. As such, this contention is also without merit.

In summary, to the extent Mr. Burgess had a right to counsel during the parole revocation hearing, counsel's representation was not ineffective. Therefore, Mr. Burgess's petition will be denied.

### III. <u>CONCLUSION</u>

For the reasons stated, Mr. Burgess's Petition for Writ of Habeas Corpus will be denied. An appropriate Order follows.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

**ANTHONY BURGESS** :
      **Petitioner** :
:
**VS.** : **3:CV-06-1954**
: **(JUDGE VANASKIE)**
:
**RONNIE HOLT** :
      **Respondent** :
:

## ORDER

**NOW, THIS 31st DAY OF JULY, 2007,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Petition for Writ of Habeas Corpus (Dkt. Entry 1) is **DENIED.**

2. The Clerk of Court shall mark this action **CLOSED.**

                                      **s/ Thomas I. Vanaskie**
                                      Thomas I. Vanaskie
                                      United States District Judge